UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

VERA TRIBBLE, OBO  
J.C.W.,  
    Plaintiff,

Case No. 1:14-cv-704  
Litkovitz, M.J.

vs.

COMMISSIONER OF  
SOCIAL SECURITY,  
    Defendant.

**ORDER**

Vera Tribble, on behalf of her minor child, J.C.W. (plaintiff) brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for children's Supplemental Security Income (SSI) benefits. This matter is before the Court on plaintiff's statement of errors (Doc. 10), the Commissioner's response in opposition (Doc. 17), and plaintiff's reply memorandum (Doc. 18).

**I. Procedural Background**

Plaintiff was born in 2003 and was nine years old at the time of the administrative law judge's (ALJ) decision. Plaintiff filed an application for children's SSI in August 2011, alleging disability due to loss of vision in her left eye due to the residuals of retinoblastoma (cancer of the retina), asthma, post-traumatic stress disorder (PTSD), and attention deficit hyperactivity disorder (ADHD). Plaintiff's application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before ALJ Gregory Kenyon. Plaintiff's mother appeared and testified at the ALJ hearing. On May 15, 2013, the ALJ issued a decision denying plaintiff's SSI application. Plaintiff's request for review by the

Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for SSI, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. *Id.*; 20 C.F.R. § 416.202. An individual under the age of 18 is considered disabled for purposes of SSI "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Social Security regulations set forth a three-step sequential analysis for determining whether a child is disabled for purposes of children's SSI benefits:

1. Is the child engaged in any substantial gainful activity? If so, benefits are denied.

2. Does the child have a medically severe impairment or combination of impairments? If not, benefits are denied.

3. Does the child's impairment meet, medically equal, or functionally equal any in the Listing of Impairments, Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P, 20 C.F.R. § 416.924(a)? If so, benefits are granted.

20 C.F.R. § 416.924(a)-(d).

If an impairment does not meet a listed impairment, disability may nonetheless be established if the child's impairment is medically or functionally equivalent to a listed impairment. A child's impairment is "medically equivalent" to a listed impairment if it is "at least equal in severity and duration to the criteria" of a listed impairment. 20 C.F.R. § 416.926.

2

In determining whether a child's impairment(s) functionally equals the listings, the adjudicator must assess the child's functioning in six domains:

1. Acquiring and using information;
2. Attending and completing tasks;
3. Interacting and relating with others;
4. Moving about and manipulating objects;
5. Caring for yourself; and
6. Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi). To functionally equal an impairment in the listings, an impairment must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). The relevant factors that will be considered in making this evaluation are (1) how well the child initiates and sustains activities, how much extra help he needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) the effects of the child's medications or other treatment. 20 C.F.R. § 416.926a(a)(1)-(3).

An individual has a "marked" limitation when the impairment "interferes seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation is one that is "more than moderate" but "less than extreme." *Id.* An "extreme" limitation exists when the impairment "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). Day-to-day functioning may be "very seriously limited" when only one activity is limited by the impairment or when several activities are limited by the impairment's cumulative effects. *Id.*

If the child's impairment meets, medically equals, or functionally equals an impairment in the listings, and if the impairment satisfies the Act's duration requirement, then the child is considered disabled. 20 C.F.R. § 416.924(d)(1). If both of these requirements are not satisfied, then the child is not considered disabled. 20 C.F.R. § 416.924(d)(2).

### B. The ALJ's findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. [Plaintiff] was born [in] . . . 2003. Therefore, she was a school-age child on August 8, 2011, the date [the] application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since August 8, 2011, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).
>
> 3. [Plaintiff] has the following severe impairments: loss of vision in the left eye due to residuals of retinoblastoma, asthma, post-traumatic stress disorder (PTSD), and attention deficit hyperactivity disorder (ADHD). (20 CFR 416.924(c)).
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).
>
> 5. [Plaintiff] does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).
>
> 6. [Plaintiff] has not been disabled, as defined in the Social Security Act, since August 8, 2011, the date the application was filed (20 CFR 416.924(a)).

(Tr. 24-34).

In determining that plaintiff's impairments are not functionally equivalent to a listed impairment, the ALJ found:

> 1. The claimant has less than marked limitation in acquiring and using information. (Tr. 29).
>
> 2. The claimant has less than marked limitation in attending and completing tasks. (Tr. 30).

4

3.  The claimant has less than marked limitation in interacting and relating to others.  (Tr. 31).

4. The claimant has less than marked limitation in moving about and manipulating objects.  (Tr. 32).

5.  The claimant has less than marked limitation in the ability to care for herself.  (Tr. 33).

6.  The claimant has marked limitation in health and physical well-being.[1]  (Tr. 33).

**C.  Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives

---

[1] The ALJ determined that plaintiff's total loss of vision in her left eye and asthma, in combination, result in a marked level of limitation on plaintiff's overall health and physical well-being.  (Tr. 33).

the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-46 (6th Cir. 2004) (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff argues the ALJ erred in determining that plaintiff has less than marked limitation in two domains of functioning: the domain of attending and completing tasks and the domain of interacting and relating to others.

#### 1. Evaluating children's SSI disability under the "whole child" approach

Functional equivalence to a listed impairment is evaluated using the "whole child" approach and requires consideration of "how the child functions every day and in all settings compared to other children the same age who do not have impairments." Social Security Ruling 09-1p. The "whole child" approach involves answering the following questions:

1. How does the child function?

2. Which domains are involved in performing the activities?

3. Could the child's medically determinable impairment(s) account for limitations in the child's activities?

4. To what degree does the impairment(s) limit the child's ability to function age-appropriately in each domain?

*Id.*

In assessing a child's degree of limitation in any given domain, Social Security Ruling 09-1p requires consideration of "how well the child can initiate, sustain, and complete activities, including the kind, extent, and frequency of help or adaptations the child needs, the effects of structured or supportive settings on the child's functioning, where the child has difficulties (at

home, at school, and in the community), and all other factors that are relevant to the determination of the degree of limitation." *Id*. (citing 20 C.F.R. § 416.924a). The degree of limitation – whether it is "marked" or "extreme" – is based on the answers to these questions:

> 1. How many of the child's activities in the domain are limited (for example, one, few, several, many, or all)?
>
> 2. How important are the limited activities to the child's age-appropriate functioning (for example, basic, marginally important, or essential)?
>
> 3. How frequently do the activities occur and how frequently are they limited (for example, daily, once a week, or only occasionally)?
>
> 4. Where do the limitations occur (for example, only at home or in all settings)?
>
> 5. What factors are involved in the limited activities (for example, does the child receive support from a person, medication, treatment, device, or structured/ supportive setting)?

*Id*.

### 2. The ALJ's finding that plaintiff has less than marked impairment in the domain of attending and completing tasks is not supported by substantial evidence.

In the domain of attending and completing tasks, school-age children (age 6 to attainment of age 12), should be able to do the following:

> • focus their attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignments.
>
> •concentrate on details and not make careless mistakes in their work (beyond what would be expected in other children the same age who do not have impairments).
>
> •change their activities or routines without distracting themselves or others, and stay on task and in place when appropriate.
>
> •sustain attention well enough to participate in group sports, read by themselves, and complete family chores.
>
> •complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(h)(2)(iv).  The regulation governing limited functioning in attending and completing tasks provides several examples describing the relevant limitations in this domain:

> •You are easily startled, distracted, or overreactive to sounds, sights, movements, or touch.
>
> •You are slow to focus on, or fail to complete activities of interest to you, e.g., games or art projects.
>
> •You repeatedly become sidetracked from your activities or you frequently interrupt others.
>
> •You are easily frustrated and give up on tasks, including ones you are capable of completing.
>
> •You require extra supervision to keep you engaged in an activity.

20 C.F.R. § 416.926a(h)(3).

In this case, the ALJ found that plaintiff has less than marked limitation in the domain of attending and completing tasks for the following reasons:

> The claimant's ADHD does cause her to have trouble focusing, but her symptoms appear to be under reasonable control with medication (Exhibit 9).  She is capable of performing reasonably well in her math class, as evidence[d] by her grades.  She is also able to do well in her music and art classes, which reflect an ability to maintain a sufficient amount of attention and concentration to listen to directions and complete projects.

(Tr. 30).

The ALJ's finding that plaintiff has less than marked impairment in attending and completing tasks is not supported by substantial evidence.  The ALJ cited to the most recent Children's Home of Cincinnati progress notes and plaintiff's good grades in math, music and art in support of this finding.  Yet, when these records are examined in connection with the record as whole, they do not provide substantial support for the ALJ's conclusion.

Plaintiff was initially referred to the Children's Home for counseling in May 2011 by her school "due to disrespectful behavior towards staff, problems with attention, blurting out answers in class, and running in the hallways." (Tr. 486). Plaintiff had been recently suspended from school for disrespecting a teacher and playing on an elevator, and her grades had fallen from As to Cs by the end of her third grade school year. (Tr. 486). Plaintiff had also been sexually abused at the age of 5 by a male relative and suffered from Post-traumatic Stress Disorder (PTSD) as a result. (Tr. 489, 491). The PTSD was demonstrated by nightmares, detachment of feelings, the inability to recall parts of the trauma, restricted affect, and anger outbursts. (Tr. 491). She also was diagnosed with Specific Phobia, Animal Type, which impeded her functionality and quality of life. (*Id.*). Plaintiff also met the criteria for Attention-Deficit/ Hyperactivity Disorder, Combined Type, as evidenced by her difficulty with sustaining attention, being forgetful about handing in completed homework assignments, blurting out answers in class, and being constantly on the go. (*Id.*).

Plaintiff treated with the Children's Home for two years to address her PTSD, ADHD, phobia of animals and insects, and negative behaviors towards adults. Plaintiff received therapy from a Children's Home therapist in the school setting. The therapy notes from the Children's Home therapist document consistent problems with focus, hyperactivity, and impulsivity over the relevant time period. (Tr. 482, 6/25/11 - difficulty staying seated and staying on task, fidgety, depressed mood, flat affect; Tr. 481, 7/9/11 - no significant change from last visit; Tr. 479, 7/29/11 - good mood with constricted affect, limited insight and judgment, easily engaged in therapeutic process; Tr. 478, 8/19/11 - anxious mood with constricted affect, hyperactive, hypervigilant, easily distracted, good concentration; Tr. 477, 9/8/11 - hyperactive, fair concentration, guarded when talking about PTSD symptoms and previous sexual abuse; Tr. 476,

9/22/11 - became anxious about students changing classes in the hallway, continues to work through feelings of anxiety, fear, and cognitive thinking errors; Tr. 475, 9/28/11 - collateral contact with school intervention specialist who reported plaintiff was timid, occasionally bullied at school, and experienced interpersonal issues with peers; Tr. 474, 9/28/11 - anxious mood with blunted affect, insecure, uneasy, fidgety, poor eye contact; Tr. 474, 11/3/11 - euthymic mood with inappropriate affect, hyperactive, difficulty staying seated, easily distracted, poor concentration; Tr. 471, 11/16/11 - won monthly math award, but hyperactive, had difficulty staying seated, needed redirection to stay on task; Tr. 469, 1/5/12 - marked difficulty staying on task, highly distractible to noise in hallway, had not taken medicine that morning; Tr. 468, 1/19/12 - hyperactive, easily distracted, had difficulty staying on task, did not take medications that morning; Tr. 467, 3/23/12 - restricted affect, anxious mood, fidgeted with hands, maintained on-task behaviors and focus during session; Tr. 466, 3/30/12 - mother reported "doing better" in regard to sexual abuse, but still having extreme mood swings and "very emotional."). Plaintiff's March 30, 2012 Individualized Service Plan Review indicated that plaintiff "continues to struggle with mental health symptoms including anxiety and mood swings" and "continues to struggle with maintaining focus and discussing her sexual abuse history." (Tr. 460). While there had been some decrease in PTSD symptoms, including nightmares, plaintiff continued to struggle a great deal with anxiety and discussing her past traumatic events. (Tr. 463). The Service Plan Review stated that plaintiff "continues to struggle with academics and staying on-task" and "would benefit from continuing to learn how to manage her impulses in all areas of her life." (Tr. 465). During one of four therapy sessions in April 2012, plaintiff was easily engaged and able to maintain on-task behaviors with minimal prompting; during the other three sessions, however, plaintiff displayed impulsive behaviors and began to shut down when redirected; she

was guarded with a restricted affect and appeared nervous and was rubbing her legs throughout the session; and she presented as guarded and shy and shut down and cried.  (Tr. 456-459).

In February 2013, Dr. John Brewer, M.D., noted that while Adderall "did help in the classroom," plaintiff had been fighting and angry, she was suspended from the bus and school for fighting, and her grades were getting worse as the year progressed.  (Tr. 541).  Dr. Brewer noted that plaintiff's academics and behavior started to become worse in the third grade.  (*Id.*). Dr. Brewer increased her dose of Adderall.  (Tr. 542).  In March 2013, Dr. Brewer noted that plaintiff's mother and father did not see much difference in plaintiff's behavior, but plaintiff was doing better in completing her homework.  He also noted that while plaintiff's teachers noted improvement in her behavior, most likely due to impulse control, plaintiff "still has problems focusing."  (Tr. 537).  That same month, plaintiff's social worker from the Children's Home assisted plaintiff in the classroom setting to work on her goal of "paying attention."  (Tr. 539-540).  The social worker reported that he assisted plaintiff in the classroom by redirecting plaintiff and reminding her to stay on task.  (Tr. 540).  He also reported that plaintiff "appeared to be participating in her group project, though [she] was easily distracted or frustrated by other group members."  (Tr. 540).  On another day, the social worker reported that plaintiff participated in the classroom, but she "needed constant reminder[s] to pay attention and stay focused."  (Tr. 539).

On February 13, 2013, two teachers completed teacher questionnaires assessing plaintiff's overall functioning in the classroom.  The numerical rating key for these forms identified a "1" as signifying "no problem" while a "5" signified a "very serious problem."  (Tr. 240).  Fourth grade writing and language arts teacher Annie Fisk reported that plaintiff was one to two years behind in her written language level.  (Tr. 238).  In the domain of attending and

11

completing tasks, Ms. Fisk reported that plaintiff had "an obvious problem" (a numerical rating of 3) in "focusing long enough to finish assigned activity or task" and "working without distracting self or others." (Tr. 240). Ms. Fisk reported these were daily problems for plaintiff and that she "gets easily distracted by her peers which causes her to get off task." (*Id.*). She identified eight other areas as "2s" or "slight" problems which occurred on a daily or hourly basis, and three areas as "no problem." (*Id.*). Ms. Fisk did not rate any activities as "serious" or "very serious" problems. Math teacher Kelly Rames also assessed plaintiff's functioning in the domain of attending and completing tasks. Ms. Rames reported that plaintiff had "an obvious problem" on a daily basis with sustaining attention during play/sports activities, focusing long enough to finish assigned activities or tasks, refocusing to task when necessary, and changing from one activity to another without being disruptive. (Tr. 266). Ms. Rames also reported that plaintiff had an "obvious" problem with working without distracting herself or others and this problem occurred on an hourly basis. (*Id.*). Ms. Rames rated five areas as slight problems and three areas as no problem. She did not rate any areas as serious or very serious problems. (*Id.*). Ms. Rames reported that plaintiff was "off task a lot, talking, making noises, etc." (Tr. 266) and that her "off-task behaviors hold [plaintiff] back on being independent with [her] work." (Tr. 265). Ms. Rames stated that plaintiff "is grouped in the low-ability group, so there is a lot of structure, support, and small group work." (*Id.*).

Plaintiff received numerous Behavioral Referrals throughout the relevant time period demonstrating plaintiff's limitations in the domain of attending and completing tasks, most notably her failure to stay on task and problems with impulsivity:

- March 11, 2011: Not following teacher's instructions; plaintiff "has been talking and not following directions during instruction" and this behavior problem has occurred five times. (Tr. 168).

- March 14, 2011: Not following a teacher's instructions; plaintiff "will not follow directions. She is always talking and yelling out answers during instruction. She is also getting out of seat and not sitting in seat correctly." This behavior problem has occurred 5 times. (Tr. 169).

- April 7, 2011 (1:30 p.m.): Not following a teacher's instructions. Plaintiff was stomping her feet, yelling out answers. Teacher asked plaintiff several times to stop, but she did not, and plaintiff was placed in time out. One hour and 10 minutes later, another student advised the teacher that plaintiff was getting on the elevator. The teacher attempted to get her, but the plaintiff ran from her. It was noted that this behavior has happened 5 times. (Tr. 173).

- April 7, 2011 (2:30 p.m.): Not following a teacher's instructions. Plaintiff refused to follow the directions of the classroom teachers and was sent to timeout. Instead, plaintiff went roaming around the building. She was suspended for 2 days. (Tr. 174).

- August 29, 2012: Excessive talking and/or talking out. Plaintiff talked constantly when the teacher was teaching; after two warnings, she continued to talk. (Tr. 547).

- September 13, 2012: Talking, laughing, shouting at inappropriate times/levels. Plaintiff "was constantly talking in class when she was not allowed to. She was unable to complete her work correctly because she missed teacher directions." (Tr. 547).

- October 22, 2012: Horseplay, pushing, hitting, tripping. Plaintiff was horse-playing on the bus, refused to remain seated, and ignored the driver's instructions. Received bus suspension. (Tr. 545).

- October 24, 2012: Defiant behavior to bus driver/aid; throwing objects on the bus. (Tr. 546).

- October 25, 2012: Talking, laughing, shouting at inappropriate time/levels; talking in the hallway even after a warning; not being prepared for class; had to go to locker for homework. (Tr. 547).

- December 10, 2012: Unacceptable physical contact; constantly poking and pinching another student. (Tr. 547).

- January 10, 2013: Talking, laughing, and shouting at inappropriate time/levels. (Tr. 547).

- January 30, 2013: Disrespect; talking in the hall and arguing with teacher. (Tr. 547).

- February 4, 2013: Disrespect; bullying another student. (Tr. 547).

- February 14, 2013: Unacceptable physical contact; yelling at and fighting with another student. Out-of-school suspension. (Tr. 547).

These records, when viewed as a whole, do not support the ALJ's conclusion that plaintiff's symptoms appear to be reasonably well-controlled with medication. The Children's Home of Cincinnati progress notes from February and March 2013 cited by the ALJ do show some level of improvement with medication in terms of impulse control at school, but the notes also reflect that plaintiff still experienced problems with focus and paying attention. Notably, the progress notes from March 2013 indicate plaintiff was easily distracted and frustrated by her classmates, she needed redirection to stay on task, and she "needed constant reminder[s] to pay attention and stay focused." (Tr. 539). When viewed in the context of the progress notes over the two-year relevant time period, these limited signs of improvement with medication do not substantially support the ALJ's conclusion.

The Commissioner concedes that the Children's Home progress notes reflect plaintiff's problems with attention and concentration, but the Commissioner notes that plaintiff was often able to be redirected to the task at hand with the help of her therapist. This evidence does not establish that plaintiff's attention and concentration problems were not serious. Instead, the evidence demonstrates only that with one-on-one support plaintiff was able to be redirected to the task at hand during an individual therapy session. It does not suggest that plaintiff was able to be easily redirected in the classroom or other settings, and the evidence of record is to the contrary.

Similarly, the ALJ cited to plaintiff's math grades as evidence that plaintiff had less than marked impairment in the domain of attending and completing tasks. However, plaintiff's math teacher reported that plaintiff "is grouped in the low-ability [math] group, so there is a lot of

14

structure, support, and small group work," and plaintiff was doing only third grade math in the fourth grade. (Tr. 264-65). While the ALJ's decision acknowledges plaintiff received "a good deal of structure" and was behind a grade level in reading and math (Tr. 27-28), the decision does not reflect that the ALJ considered the effect of the significant structure and supportive services provided to plaintiff on her ability to *independently* initiate, sustain, or complete activities in assessing the domain of attending and completing tasks. 20 C.F.R. §§ 416.926a(e)(2)(i), 416.926a(e)(3)(i). The Social Security regulations require the ALJ to examine how much extra help a child needs and the effects of structured or supportive settings. *See* 20 C.F.R. § 416.926a(a)(l). The pertinent regulation provides:

> A structured or supportive setting may minimize signs and symptoms of your impairment(s) and help to improve your functioning while you are in it, but your signs, symptoms, and functional limitations may worsen outside this type of setting. Therefore, *we will consider your need for a structured setting and the degree of limitation in functioning you have or would have outside the structured setting*. Even if you are able to function adequately in the structured or supportive setting, we must consider how you function in other settings and whether you would continue to function at an adequate level without the structured or supportive setting.

20 C.F.R. § 416.924a(b)(5)(iv)(C) (emphasis added). *See also* Social Security Ruling 09–1p, Section III (recognizing that child who "needs a person, medication, treatment, device, or structured, supportive setting to make his functioning possible or to improve the functioning" is not "as independent as same-age peers who do not have impairments"). There is no indication from the ALJ's decision that he considered the effect of plaintiff's structured environment, supportive services and counseling, and need for one-on-one assistance to remain on task and complete assignments in assessing plaintiff's ability to function independently in the domain of attending and completing tasks. As the regulations define "marked" and "extreme" limitations in relation to a child's ability to "independently initiate, sustain, or complete activities," 20 C.F.R.

§§ 416.926a(e)(2)(i), 416.926a(e)(3)(i), it was incumbent upon the ALJ to give some indication on the record that these critical factors were considered.

The Commissioner also argues that the ALJ's decision is substantially supported by the two teacher questionnaires which show only "obvious" or "slight" problems, not "serious" problems. (Doc. 17 at 7). However, the Commissioner fails to cite to any authority showing that a "serious" problem in any particular area is equivalent to a "marked" limitation for the domain ratings. Pursuant to the Program Operation Manual System (POMS) DI 25205.030, adjudicators are cautioned that teacher questionnaire ratings do not translate directly into domain ratings and "a teacher's narrative comments are extremely important, because they provide the adjudicator a tool for more clearly understanding the numerical rating of an individual's limitations in functioning." *Id*. The POMS also state that teacher questionnaires can be used to understand not only the severity of a problem, but they can also provide perspective on the frequency of the problem:

> For example, a child who has "an obvious problem" *on an hourly basis* with "paying attention when spoken to directly," "refocusing to task when necessary," "carrying out single-step instructions," and "changing from one activity to another without being disruptive," may demonstrate a greater limitation in Attending and Completing Tasks than a child who has "a serious problem" *on a monthly basis* with "completing work accurately without careless mistakes," and "working at a reasonable pace/finishing on time."

POMS DI 25205.030 (emphasis in the original). A teacher questionnaire "must be considered in the context of all available information about the individual," including test scores, medical evidence and evidence from parents. *Id*.

Here, the Commissioner appears to equate the teacher rating of "obvious" problems with a "less than marked" rating for the domain of attending and completing tasks, while disregarding the frequency of such problems and the teacher narrative comments. For example, in the

"attending and completing tasks" domain, Ms. Fisk opined that the plaintiff has "obvious" problems on a daily basis with "focusing long enough to finish assigned activity or task" and "working without distracting self or others." (Tr. 240). While Ms. Fisk rated other activities as a "slight" problem, she noted that these problems occurred on an hourly or daily basis and that plaintiff "gets easily distracted by her peers which causes her to get off task." *Id*. Similarly, Ms. Rames reported that the plaintiff had an "obvious" problem on a daily basis with sustaining attention during play/sports activities, focusing long enough to finish assigned activities or tasks, refocusing to task when necessary, and changing from one activity to another without being disruptive. (Tr. 266). Ms. Rames also reported that plaintiff had an "obvious" problem on an *hourly* basis with working without distracting herself or others. (Tr. 266). She also reported that plaintiff was "off task a lot, talking, making noises, etc." (Tr. 266) and that her "off-task behaviors hold [plaintiff] back on being independent with [her] work."[2] (Tr. 265). The frequency of these "obvious" and "slight" problems, when viewed as a whole, indicate greater limitation of functioning than assessed by the ALJ. When viewed in the context of the record as a whole, along with the counseling and supportive services plaintiff received over the relevant time period, these limitations are consistent with and supportive of a finding that plaintiff suffers a marked limitation in this domain. *Cf. McClain v. Barnhart*, 299 F. Supp. 2d 309, 315 (S.D.N.Y. 2004) ("[W]hen a child suffers from multiple impairments within a single domain, each of which, when considered separately, imposes a less-than-marked limitation, the combined result nonetheless may be marked or extreme.") (citing *Encarnacion v. Barnhart*, 191 F. Supp.2d

---

[2] The Commissioner takes issue with plaintiff's citation to these narrative comments as they were recorded by Ms. Rames on the page requesting information on the domain of acquiring and using information, a domain plaintiff does not challenge. Yet, the Social Security regulations recognize that limitations in one functional domain may impact functioning in another domain: "[A]ny given impairment may have effects in more than one domain; therefore, we will evaluate the limitations from your impairment(s) in any affected domain(s)." 20 C.F.R. § 416.926a(c). Ms. Rames' narrative comments are relevant to plaintiff's functioning in the domain of attending and completing tasks and should have been considered in assessing the severity of plaintiff's functioning in this domain.

463, 474 (S.D.N.Y. 2002) (two less-than-marked limitations in the area of social functioning may cumulatively contribute to the finding of a marked or extreme limitation in the area of social functioning)); *F.M. v. Astrue*, No. 08-cv-4430, 2009 WL 2242134, at *10 (E.D.N.Y. July 27, 2009) (limitations of "slight" problems in four areas and "obvious" problems in six areas, including learning new material and applying problem-solving skills in class discussions, taken together, are consistent with and support a finding that child suffers a marked limitation in domain of acquiring and using information).

Finally, the ALJ reasoned that because plaintiff was able to do well in music and art classes, she had the "ability to maintain a sufficient amount of attention and concentration to listen to directions and complete projects." (Tr. 30). This conclusion ignores the balance of the record evidence showing plaintiff was repeatedly disciplined for not listening to directions, not attending to her schoolwork, and not attending to her assignments on an independent basis. Moreover, this ignores the evidence that despite doing "well in her music and art classes," plaintiff was placed on a list to be retained in the fourth grade due to her failure to complete her schoolwork and she in fact was held back. (Tr. 27, 276, 278). Accordingly, the Court finds that the ALJ's decision finding "less than marked limitation" in the domain of "attending and completing tasks" is not supported by substantial evidence and must be reversed.[3]

### III. Conclusion

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision

---

[3] The Court need not reach plaintiff's other assignment of error regarding the ALJ's finding that plaintiff has less than marked limitation in interacting and relating to others. Because the Court determines plaintiff has marked limitation in the domain of attending and completing tasks and the ALJ has determined that plaintiff has marked limitation in the domain of health and physical well-being, a finding of marked limitations in these two domains qualifies plaintiff as disabled under the Commissioner's regulations. 20 C.F.R. §§ 416.926a(d).

18

"with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).  The Court may reverse and direct an award of benefits if "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits" and "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *see also Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

In this case, the proof of disability is strong.  The ALJ has already determined that plaintiff has marked limitation in the domain of health and physical well-being based on the combination of plaintiff's total loss of vision in her left eye and asthma impairments. (Tr. 33). For the reasons set forth above, the Court finds that the evidence showing plaintiff has marked impairment in the domain of attending and completing tasks is strong and that evidence to the contrary is lacking.  In accordance with 20 C.F.R. § 416.926a(d), plaintiff functionally equals an impairment in the listings as her impairments result in "marked" limitations in two domains of functioning.  The Court concludes that there are no unresolved legal or factual issues. Accordingly, the ALJ's decision is reversed and the case is remanded for an award of benefits.

## IT IS THEREFORE ORDERED THAT:

The decision of the Commissioner is **REVERSED** and this case is **REMANDED** for an award of benefits pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date:  11/16/15                                s/Karen L. Litkovitz
                                               Karen L. Litkovitz
                                               United States Magistrate Judge